Filed 7/16/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE , | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S189317 |
| v. | ) | |
| | ) | Ct.App. 2/4 B215387 |
| BRANDON ALEXANDER FAVOR, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. BA285265 |
| _____ | ) | |

In this case, a jury found defendant guilty of two counts of robbery, as an aider and abettor, and guilty of two counts of attempted murder, on the theory that the nontarget offenses of attempted murder were a natural and probable consequence of the target offenses of robbery which defendant had aided and abetted. The jury further found that the attempted murders were willful, deliberate, and premeditated, under Penal Code section 664, subdivision (a) (section 664(a)).[1] The statute increases the punishment for attempted murder beyond the maximum otherwise prescribed, when those findings are found true by the trier of fact.

In *People v. Cummins* (2005) 127 Cal.App.4th 667 (*Cummins*), the Court of Appeal held that as to the premeditation allegation under section 664(a), the trial court need only instruct that the jury must find that the commission of attempted

---

**1**    All further statutory references are to the Penal Code.

1

murder was a natural and probable consequence of the target crime of robbery. It need not instruct that *premeditation* must also be a natural and probable consequence of the robbery. (*Id.* at pp. 680-681.) On the other hand, in *People v. Hart* (2009) 176 Cal.App.4th 662 (*Hart*), the Court of Appeal held the trial court must instruct that the jury must find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the target offense. (*Id.* at p. 673.)

In a published opinion, the Court of Appeal here followed *Cummins* and concluded the instructions were sufficient with respect to the natural and probable consequences doctrine as applied to the premeditation allegation under section 664(a). We granted review to resolve the conflict.

We agree with *Cummins* and the Court of Appeal in this case that the jury need not be instructed that a premeditated attempt to murder must have been a natural and probable consequence of the target offense.

## I. FACTS AND PROCEDURAL HISTORY

On November 8, 2004, defendant accompanied two companions to the A & J Liquor store, which also operated a check-cashing business. Owner Paul Lee and employees Pablo Castaneda and Jose Huerta were working. Huerta had his back turned when two or three individuals entered the store and locked the door. Huerta heard a gunshot fired from near his head, and felt its discharge burn his head. He fell to the floor and stayed there. After the shot near his head, he heard three more gunshots and a cash register being opened. One of the intruders ordered, "Get the telephone, get the cameras, and I'll find you. You already know where." A second person asked, "Where are the cameras?" Huerta answered that the cameras were in the back. When one of the men demanded his money, Huerta gave it to him. Huerta walked to the office in the back of the store, where the security videos were located. The man followed him, looked around inside the

room, then exited the store. After the intruders left, Huerta locked the door and found that Castaneda had been shot once in the head and was dead. Lee was lying on the ground and had been shot twice, once in the neck and once in the chest. Although suffering grave injury, Lee ultimately survived.

It was later determined that the robbers took between $50,000 and $70,000 from the check-cashing portion of business, approximately $1,000 from the grocery portion of the business, as well as a mobile telephone, and prepaid telephone calling cards.

In June 2005, the police arrested defendant after a flyer was distributed, containing a photograph of defendant from the store security video. During a recorded interview, which was played at trial, defendant admitted that he went to the A & J Liquor Store earlier on the day of the robbery with an ex-gang member known as "Trouble." The two men noticed that the store was not very secure. Trouble said he would tell his partners about it, and they got on a bus to meet up with them. Defendant stated that he recognized one of the men from the streets as an active gang member. He was also fairly sure he had gone to high school with the other man, who was the shooter. Defendant described the shooter as a "shady character" who was not to be trusted.

After Trouble told the two men about the liquor store, defendant and the two men took the bus back to the store. Defendant went in the store first to see how many people were inside. Seeing nobody, he walked out. Defendant claimed that the two men then entered the store without him, and that he heard gunshots. In response to defendant's knock, the shooter opened the door with a gun in his hand and told defendant to "get the money." Defendant saw that several people had been shot and proceeded to take everything from the cash register. He also grabbed a mobile phone and gave it to the shooter.

3

However, the store's video showed that defendant and two men entered the store together. Defendant entered first, a man wearing a security jacket entered second, and the shooter entered third.

The prosecution charged defendant with one count of first degree murder, with the special circumstance that it was committed while he was engaged in the commission of a robbery (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17)(A)), two counts of attempted murder (§§ 664/187, subd. (a)), and two counts of second degree robbery (§ 211). The information further alleged that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and that the attempted murders were committed willfully, deliberately and with premeditation. Under the prosecution's theory at trial, defendant was guilty of first degree murder under the felony-murder rule, of robbery as an aider and abettor, and of attempted murder under the natural and probable consequences doctrine.

A jury found defendant guilty as charged and the enhancement allegations to be true. The trial court imposed a sentence of life imprisonment without possibility of parole for the murder and consecutive terms of life imprisonment with the possibility of parole for the attempted murders, with an additional year on each term for the arming enhancement. It stayed the sentences for robbery.

The Court of Appeal affirmed the convictions. Relying on our decision in *People v. Lee* (2003) 31 Cal.4th 613 (*Lee*) and on *Cummins, supra*, 127 Cal.App.4th 667, and disagreeing with *Hart, supra*, 176 Cal.App.4th 662, the court concluded that the trial court did not err in failing to relate the premeditation and deliberation instruction to the natural and probable consequences instruction.

We granted defendant's petition for review.

## II. DISCUSSION

Defendant contends that the willful, deliberate, and premeditated findings should be vacated. He argues that the trial court failed to instruct that the jury had

4

to find, not only that the attempted murder was a natural and probable consequence of the robberies, but also that the perpetrator's willfulness, deliberation, and premeditation were natural and probable consequences.

" 'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. [Citation.]' [Citation.] Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 920; see *People v. Prettyman* (1996) 14 Cal.4th 248, 254.) A reasonably foreseeable consequence is a factual issue to be resolved by the jury who evaluates all the factual circumstances of the individual case. (*People v. Medina, supra*, 46 Cal.4th at p. 920.)

Under the prosecution's theory at trial, defendant was guilty of the target offense of robbery as an aider and abettor, and of the nontarget offense of attempted murder as a natural and probable consequence of the robbery. Regarding that theory, the trial court instructed (pursuant to CALCRIM No. 402) as follows: "The defendant is charged in Counts 4 through 5 with robbery and in Counts 2 through 3 with attempted murder. [¶] You must first decide whether the defendant is guilty of robbery. If you find the defendant is guilty of this crime, then you must decide whether he is guilty of attempted murder. [¶] Under certain circumstances, a person who is guilty of one crime also may be guilty of other crimes that were committed at the same time. [¶] To prove that the defendant is

5

guilty of attempted murder, the People must prove that: [¶] 1. The defendant is guilty of robbery; [¶] 2. During the commission of robbery, a co-participant in that robbery committed the crime of attempted murder, and [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of attempted murder was a natural and probable consequence of the commission of the robbery."

The prosecution alleged that the attempted murder was willful, deliberate, and premeditated under the penalty provision of section 664(a). Section 664(a) provides that a defendant convicted of attempted murder is subject to a determinate term of five, seven, or nine years. However, a defendant convicted of attempted murder is subject to a sentence of life with the possibility of parole if the jury finds that the attempted murder was "willful, deliberate, and premeditated murder, as defined in Section 189." (*Ibid*.)

Regarding the attempted murder/premeditation allegation, the trial court instructed (pursuant to CALCRIM No. 601) as follows: "If you find the defendant guilty of attempted murder in Count 2 and/or Count 3, then you must decide whether the People have proved the additional allegation that the attempted murder was done willfully and with deliberation and premeditation, within the meaning of Penal Code section 664(a). [¶] The defendant and/or a principal acted willfully if he intended to kill when he acted. The defendant and/or a principal deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant and/or a principal premeditated if he decided to kill before acting. [¶] The attempted murder was done willfully and with deliberation and premeditation if either the defendant or a principal or both of them acted with that state of mind."

Relying primarily on *Hart, supra*, 176 Cal.App.4th 662, defendant argues that the trial court committed reversible instructional error by failing to instruct the

6

jury on the natural and probable consequences doctrine as to the nontarget offense of attempted willful, deliberate, and premeditated murder.

The facts in *Hart* are similar to the present case. The defendant and a confederate attempted to rob a store employee, who was shot by the confederate during the commission of the offense. The store employee survived. The jury found defendant guilty of attempted murder and that the attempted murder was willful, deliberate, and premeditated. One of the prosecution's theories of guilt was that the attempted murder was a natural and probable consequence of the attempted robbery that the defendant had aided and abetted. (*Hart, supra*, 176 Cal.App.4th at pp. 665-668.)

*Hart* reversed the jury's premeditation and deliberation finding on the attempted murder conviction because the trial court failed to instruct the jury "to find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the attempted robbery." (*Hart, supra*, 176 Cal.App.4th at p. 673.) The court noted that, although it was reasonable to infer the defendant knew his companion had a gun and intended to use it if necessary, a reasonable person in the defendant's position may not have concluded that attempted premeditated murder would be a natural and probable result of the planned robbery. (*Id.* at p. 672.) Thus, "a reasonable jury could have concluded that the actual perpetrator [the companion] was guilty of attempted premeditated murder but that the aider and abettor [the defendant] was guilty of no more than attempted unpremeditated murder." (*Ibid.*)

In reaching that conclusion, the *Hart* court relied on its previous opinion in *People v. Woods* (1992) 8 Cal.App.4th 1570. In *Woods*, the court held that, "[i]f the evidence raises a question whether the offense charged against the aider and abettor is a reasonably foreseeable consequence of the criminal act originally aided and abetted but would support a finding that a necessarily included offense

7

committed by the perpetrator was such a consequence, the trial court has a duty to instruct sua sponte on the necessarily included offense as part of the jury instructions on aider and abettor liability." (*Id*. at p. 1593.) Because an aider and abettor may be convicted of a lesser offense than that committed by the perpetrator, *Woods* concluded the trial court should have instructed that the jury could find the aider and abettor guilty of the nontarget crime of *second* degree murder even though the actual perpetrator was guilty of *first* degree murder. (*Id*. at pp. 1577, 1590.)

*Hart*'s analysis fails for two reasons. First, contrary to *Hart*'s presupposition, attempted premeditated murder and attempted unpremeditated murder are not separate offenses. Attempted murder is not divided into different degrees. (*People v. Douglas* (1990) 220 Cal.App.3d 544, 549 [rejecting claim that attempted second degree murder is lesser offense included within offense of attempted willful, deliberate, and premeditated murder], cited with approval in *People v. Bright* (1996) 12 Cal.4th 652, 665-667 (*Bright*)), which we disapproved on another ground in *People v. Seel* (2004) 34 Cal.4th 535, 550, fn. 6.[2]) "[T]he provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is 'willful, deliberate, and premeditated' does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder." (*Bright, supra*, 12 Cal.4th at pp. 656-657].) "[T]he

---

[2]    In *People v. Seel*, *supra,* 34 Cal.4th at page 539, we held that because section 664(a)'s penalty provision exposes a defendant to a greater punishment than that authorized by a jury's guilty verdict of attempted murder, it is the " 'functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict' " for purposes of federal double jeopardy protection. (See *Seel,* at pp. 547-548; see also *Apprendi v. New Jersey* (2000) 530 U.S. 466, 494, fn. 19.)

statutory language employed in prescribing an additional penalty for attempted murder . . . reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense." (*Bright, supra*, 12 Cal.4th at p. 668; see also *id*. at p. 670 ["the division of a crime into degrees constitutes an exclusively legislative function"].)  Thus, "premeditated attempted murder is not a separate offense from attempted murder."  (*Anthony v. Superior Court* (2010) 188 Cal.App.4th 700, 706.)  Because *Woods* involved murder — not attempted murder — where there are different degrees of the offense, *Hart*'s reliance on *Woods*'s lesser included offense analysis is misplaced.

Second, along with failing to discuss *Bright*, *Hart* did not consider the impact of *Lee, supra*, 31 Cal.4th 613.  In *Lee*, we held that the premeditation penalty provision of section 664(a), "must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor."  (*Lee*, *supra*, 31 Cal.4th at p. 616.)  We reasoned that section 664(a) "makes no distinction between an attempted murderer who is guilty as a direct perpetrator and an attempted murderer who is guilty as an aider and abettor" and does not require personal willfulness, deliberation, and premeditation of an attempted murderer.  (*Id*. at p. 623.)  Thus, premeditation is not a required component of the aider and abettor's mental state.  Accordingly, we found that the trial court did not err in failing to instruct that to find the premeditation allegation to be true, the jury must find personal willfulness, deliberation, and premeditation as to an attempted murderer who is guilty as an aider and abettor.  (*Id.* at pp. 616-617.)

We observed that the Legislature would have been justified in refusing to extend section 664(a)'s penalty provision to an aider and abettor who fails to personally act with premeditation, but did not.  We reasoned that because an aider

9

and abettor must share the specific intent of the direct perpetrator and have knowledge of the perpetrator's criminal purpose, "the Legislature reasonably could have determined that an attempted murderer who is guilty as an aider and abettor, but who did not personally act with willfulness, deliberation, and premeditation, is sufficiently blameworthy to be punished with life imprisonment." (*Lee*, *supra*, 31 Cal.4th at p. 624.) Although *Lee* did not involve the natural and probable consequences doctrine, we commented in dictum that "where the natural-and-probable consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy. In light of such a possibility, it would not have been irrational for the Legislature to limit section 664(a) only to those attempted murderers who personally acted willfully and with deliberation and premeditation. But the Legislature has declined to do so." (*Id.* at pp. 624-625.) Thus, we indicated that section 664(a) applies to all aiders and abettors.

Moreover, we noted that even in the case of aiders and abettors under the natural and probable consequences doctrine, punishment need not be finely calibrated to the criminal's mens rea. It takes account of other valid penalogical considerations, such as the defendant's conduct, the consequences of such conduct, and the surrounding circumstances, including the fact that the murder attempted was willful, deliberate, and premeditated. (*Lee*, *supra*, 31 Cal.4th at p. 627.)

In *Cummins, supra*, 127 Cal.App.4th 667, the Court of Appeal extended *Lee*'s analysis to the natural and probable consequences doctrine. There, the defendant and a companion robbed and carjacked a driver, then either the defendant or his companion pushed the victim off a cliff. The jury found defendant guilty of attempted murder as an aider and abettor under the natural and probable consequences doctrine and found the premeditation allegation to be true.

10

Noting that the defendant "was a willing and active participant in all the steps that led to the attempt on [the victim's life]," the court concluded "[w]e see no reason, under the facts of this case, to depart from the reasoning of the *Lee* court in a situation that applies the natural and probable consequences doctrine." (*Id.* at p. 680; see also *People v. Curry* (2007) 158 Cal.App.4th 766, 792 [agreeing "that *Lee* should apply in a case involving the natural and probable consequences doctrine"].)

The Court of Appeal in this case correctly followed *Cummins* and disagreed with *Hart*. As the Court of Appeal noted, we "observed in *Lee*, [that] the Legislature declined to make a distinction in the findings necessary for perpetrators or for aiders and abettors in Penal Code section 664, subdivision (a)." We further indicated that the Legislature, in adding section 664(a)'s penalty provision, made no distinctions between aiders and abettors in general and those guilty under the natural and probable consequences doctrine. (*Lee*, *supra*, 31 Cal.4th at pp. 624-625.) As the Attorney General points out, since *Lee*, the Legislature has not modified the premeditation penalty provision in section 664(a), although it has modified subdivision (a) and other subdivisions of section 664 in other respects. "[W]hen as here ' "a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." [Citations.] "There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts." ' " (*People v. Meloney* (2003) 30 Cal.4th 1145, 1161.)

As noted above, *Hart*'s analysis rested on the distinction between greater and lesser included offenses in general and on the general rule that a trial court has a duty to instruct on lesser included offenses if the evidence supports a conviction on the lesser offense. However, *Hart*'s reliance on the principles relating to lesser

11

included offenses is inapplicable in light of *Bright, supra* 12 Cal.4th 652, and *Lee, supra*, 31 Cal.4th 613. Attempted premeditated murder is not a greater offense or degree of attempted murder. (*Bright, supra* 12 Cal.4th at pp. 656-657, 668.) Thus, *Hart* incorrectly concluded that an actual perpetrator can be guilty of attempted premeditated murder, while the aider and abettor can be guilty of the lesser offense of attempted unpremeditated murder. (*Hart, supra*, 176 Cal.App.4th at p. 672.) Moreover, *Lee* refutes *Hart*'s underlying premise that an aider and abettor would be less culpable than the direct perpetrator if he or she did not personally act with premeditation and deliberation. As we explained in *Lee,* an aider and abettor need not share the heightened mental state of the direct perpetrator for the applicability of section 664(a)'s penalty provision. (*Lee, supra*, 31 Cal.4th at pp. 621-622.) Once the jury finds that the murder attempted was deliberate and premeditated, both the direct perpetrator and the aider and abettor are subject to section 664(a)'s penalty provision. (*Lee,* at pp. 621-622.) The Court of Appeal correctly declined to follow *Hart*.[3]

Because section 664(a) "requires only that the attempted murder itself was willful, deliberate, and premeditated" (*Lee, supra*, 31 Cal.4th at p. 626), it is only necessary that the attempted murder "be committed by one of the perpetrators with the requisite state of mind." (*Cummins, supra*, 127 Cal.App.4th at p. 680.) Moreover, the jury does not decide the truth of the penalty premeditation allegation until it first has reached a verdict on the substantive offense of attempted murder. (*Bright, supra*, 12 Cal.4th at p. 661.) Thus, with respect to the natural and probable consequences doctrine as applied to the premeditation allegation under section 664(a), attempted murder — not attempted premeditated

---

**3** We disapprove *People v. Hart, supra*, 176 Cal.App.4th 662, to the extent it is inconsistent with this opinion.

12

murder — qualifies as the nontarget *offense* to which the jury must find foreseeability. Accordingly, once the jury finds that an aider and abettor, in general or under the natural and probable consequences doctrine, has committed an attempted murder, it separately determines whether the attempted murder was willful, deliberate, and premeditated.

Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation.

### III. DISPOSITION

We affirm the judgment of the Court of Appeal.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CORRIGAN, J.**

13

**DISSENTING OPINION BY LIU, J.**

Defendant was convicted of two counts of attempted murder on the theory that he aided and abetted the crime of robbery and that attempted murder was a natural and probable consequence of the robbery. Attempted murder is punishable by imprisonment for five, seven, or nine years. (Pen. Code, § 664, subd. (a) (hereafter section 664(a)); further undesignated statutory references are to this code.) However, if the attempted murder is "willful, deliberate, and premeditated," then it "shall be punished by imprisonment . . . for life with the possibility of parole." (*Ibid.*) The jury in this case found that the attempted murders were committed willfully, deliberately, and with premeditation within the meaning of section 664(a). On that basis, the trial court sentenced defendant to consecutive life terms with the possibility of parole.

The trial court instructed the jury that it must determine whether "a reasonable person in the defendant's position would have known that the commission of attempted murder was a natural and probable consequence of the commission of the robbery." But the trial court did not instruct the jury that it must determine whether a reasonable person in defendant's position would have known that *premeditation* in the commission of attempted murder was a natural and probable consequence of the robbery. This omission was error. In order to convict defendant of premeditated attempted murder on the theory that it was a natural and probable consequence of the robbery, the trier of fact must find that

1

*premeditated* attempted murder — not simply attempted murder — was a reasonably foreseeable consequence of committing the robbery. Because today's decision violates the fundamental precept that what is or is not a reasonably foreseeable consequence "is a factual issue to be resolved by the jury" (*People v. Medina* (2009) 46 Cal.4th 913, 920 (*Medina*)), I respectfully dissent.

**I.**

Criminal liability for aiding and abetting a crime is based on statute. Section 30 classifies the "parties to crimes" as principals and accessories. Section 31 defines "principals" in a crime to include persons who "aid and abet in its commission, or . . . have advised or encouraged its commission." This court has interpreted section 31 to require that an aider and abettor must act "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)

The natural and probable consequences doctrine is a creature of common law. "At common law, a person encouraging or facilitating the commission of a crime could be held criminally liable not only for that crime [the target offense], but for any other offense [a nontarget offense] that was a 'natural and probable consequence' of the crime aided and abetted. [Citation.]" (*People v. Prettyman* (1996) 14 Cal.4th 248, 260 (*Prettyman*); see *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5.) The rationale for the doctrine is that "aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion.' [Citation.]" (*Prettyman*, at p. 260.)

Criminal liability under the natural and probable consequences doctrine is premised on a causal link between the charged nontarget offense and the target offense aided and abetted by the defendant. A question that often arises is whether a sufficient causal link exists under the circumstances of the case, and the answer

2

turns on whether the nontarget offense was a reasonably foreseeable consequence of the target offense.  As we explained in *Medina*:  " 'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime  the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.  The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable.  [Citation.]' [Citation.]  Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.'  [Citation.]" (*Medina*, *supra*, 46 Cal.4th at p. 920.)

Whether a nontarget offense is a reasonably foreseeable consequence of the target offense is a fact-specific inquiry to be resolved by a jury.  This basic rule was established over a century ago in the first California decision to embrace the natural and probable consequences doctrine.  (See *People v. Kaufman* (1907) 152 Cal. 331, 335 ["[W]hether or not the act committed was the ordinary and probable effect of the common design or whether it was a fresh and independent product of the mind of one of the conspirators, outside of, or foreign to, the common design, is a question of fact for the jury, [citations], and if there be any evidence to support the finding of the jury on this question, its determination is conclusive."].)  Over the years, we have consistently followed this rule.  (See *Medina*, *supra*, 46 Cal.4th at p. 920 ["A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case [citation] and is a factual issue to be resolved by the jury."]; *People v. Croy*, *supra*, 41 Cal.3d at p. 12, fn. 5, quoting *People v. Durham* (1969) 70 Cal.2d 171, 181 [" ' "*Whether the act committed was*

3

*the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury.*" ' "].)

A jury finding of reasonable foreseeability provides the crucial nexus that links a defendant's culpability for aiding and abetting the target offense to his criminal liability for the nontarget offense. Without that nexus, there is no basis — no legally sufficient theory of causation — to find the defendant culpable for the nontarget offense. Our cases have thus recognized, without exception, that "the trier of fact must . . . find that . . . the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted." (*Prettyman*, *supra*, 14 Cal.4th at p. 262.)

Today's decision departs from this basic rule. The court holds that defendant may be convicted of *premeditated* attempted murder as a natural and probable consequence of the robbery he aided and abetted, even though the jury was asked to determine only whether "the commission of attempted murder was a natural and probable consequence of the commission of the robbery." This holding disregards the essential causal link that must exist between the charged nontarget offense and the target offense aided and abetted by defendant. How can defendant be convicted of *premeditated* attempted murder on a natural and probable consequences theory when the jury was never asked to determine whether *premeditated* attempted murder was a natural and probable consequence of the target offense?

The Court of Appeal in *People v. Hart* (2009) 176 Cal.App.4th 662 (*Hart*) reached the correct result on facts similar to those in this case. Two men, Hart and Rayford, went to rob a liquor store. Hart had a gun and ordered the store owner, Singh, to open a drawer under the cash register. Upon seeing a gun in the drawer, Hart shot Singh, injuring but not killing him. "One of the prosecution's theories of guilt as to Rayford was that he aided and abetted Hart in the attempted robbery of

4

Singh and that the attempted murder of Singh was a natural and probable consequence of the attempted robbery." (*Id.* at p. 668.) The jury was asked whether attempted murder was a natural and probable consequence of the attempted robbery and, if so, whether the attempted murder was premeditated. (*Id.* at pp. 669-670.) Rayford was convicted of premeditated attempted murder and sentenced to life imprisonment with the possibility of parole.

The Court of Appeal held that the trial court erred in failing to instruct the jury that "in order to find Rayford guilty of attempted premeditated murder as a natural and probable consequence of attempted robbery, it was necessary to find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the attempted robbery." (*Hart*, *supra*, 176 Cal.App.4th at p. 673.) Without the proper instruction, the court explained, the jury never determined the precise extent of Rayford's culpability: "Based on the facts of this case, a reasonable jury could have concluded that the actual perpetrator (Hart) was guilty of attempted premeditated murder but that the aider and abettor (Rayford) was guilty of no more than attempted unpremeditated murder. It is beyond dispute that Hart and Rayford planned to rob the victims. Hart had a gun and used it, and it is reasonable to infer that Rayford knew that Hart had a gun and intended to use it if necessary. However, it would also be reasonable on these facts to conclude that a reasonable person in Rayford's position may not have concluded that attempted premeditated murder would be a natural and probable result of the planned robbery. In other words, it was theoretically possible for the jury to conclude that Hart premeditated the attempted murder but that such premeditation was not a natural and probable consequence of the attempted robbery. That was a factual question for the jury. Although the facts in the record are sufficient to support a jury finding that attempted premeditated murder was a natural and

5

probable consequence of the attempted robbery, the facts do not lead ineluctably to that conclusion." (*Id.* at p. 672, fn. omitted.)

Here, as in *Hart*, a reasonable jury could have found that although defendant's confederate premeditated the attempted murder, such premeditation was not a natural and probable consequence of the robbery. The evidence amply supported the jury's finding that attempted murder was a reasonably foreseeable consequence of the robbery. The jury could have readily inferred that defendant knew his confederate was carrying a gun and intended to use it if necessary. But it is less clear that a reasonable person in defendant's position would have or should have known that his confederate's *premeditated* commission of attempted murder was a reasonably foreseeable consequence of the robbery. Defendant does not contend that it would be unreasonable for a jury to so find. His only claim is that this question should have been put to the jury. Under our long and settled line of cases holding that reasonable foreseeability "is a factual issue to be resolved by the jury" (*Medina*, *supra*, 46 Cal.4th at p. 920), defendant is correct.

## II.

Today's opinion avoids this straightforward conclusion through a series of unpersuasive arguments, the sum total of which stretches the natural and probable consequences doctrine beyond principled application.

First, the court discredits *Hart* on the ground that "attempted premeditated murder and attempted unpremeditated murder are not separate offenses. Attempted murder is not divided into different degrees." (Maj. opn., *ante*, at p. 8, citing *People v. Bright* (1996) 12 Cal.4th 652, 665-667.) The court says *Hart* failed to discuss *Bright* and improperly relied on *People v. Woods* (1992) 8 Cal.App.4th 1570 (*Woods*), which held that "[i]f the evidence raises a question whether the offense charged against the aider and abettor is a reasonably foreseeable consequence of the criminal act originally aided and abetted but would

6

support a finding that a necessarily included offense committed by the perpetrator was such a consequence, the trial court has a duty to instruct sua sponte on the necessarily included offense as part of the jury instructions on aider and abettor liability." (*Id*. at p. 1593.) "Because *Woods* involved murder — not attempted murder — where there are different degrees of the offense, *Hart*'s reliance on *Woods*'s lesser included offense analysis is misplaced." (Maj. opn., *ante*, at p. 9.)

As the court acknowledges in a footnote (maj. opn., *ante*, at p. 8, fn. 2), however, we held in *People v. Seel* (2004) 34 Cal.4th 535 (*Seel*) that because a premeditation allegation under section 664(a) exposes the defendant to significantly greater punishment for attempted murder, the high court's decision in *Apprendi v. New Jersey* (2000) 530 U.S. 466 — issued four years after *Bright* — "compels the conclusion that section 664(a) constitutes an element of the offense. [Citation.]" (*Seel*, at p. 549.) We noted that " '[t]he defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense "element." ' [Citation.] . . . '[[S]ection 664(a)'s] inquiry goes precisely to what happened in the "commission of the offense." ' [Citation.]" (*Seel*, at p. 549.)

Although *Seel* did not specifically overrule *Bright*'s holding that section 664(a) does not divide attempted murder into different degrees (cf. *Seel*, *supra*, 34 Cal.4th at p. 550, fn. 6 [declaring *Bright* "no longer controlling" to the extent its analysis "conflict[s] with intervening high court decisions"]), it is not clear what difference that makes to the present inquiry. The Court of Appeal in *Hart* explained that "[t]he logic of *Woods* is not based on the separation of murder into degrees. It is based on the possibility that the jury could conclude that the aider and abettor was not necessarily guilty of all of the elements of the greater crime committed by the actual perpetrator." (*Hart*, *supra*, 176 Cal.App.4th at p. 673, citing *Woods*, *supra*, 8 Cal.App.4th at p. 1593.) Here, as in *Hart*, defendant's

7

claim does not turn on whether premeditated attempted murder and unpremeditated attempted murder are separate offenses under section 664(a). Defendant's claim is that the jury never decided whether his culpability properly extended — by dint of reasonable foreseeability — to all elements of the nontarget offense committed by his confederate, including premeditation. As noted, "the trier of fact must . . . find that . . . the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted" (*Prettyman*, *supra*, 14 Cal.4th at p. 262), and " '[section 664(a)'s] inquiry goes precisely to what happened in the "commission of the offense" ' " (*Seel*, *supra*, 34 Cal.4th at p. 549).

Next, the court relies on *People v. Lee* (2003) 31 Cal.4th 613, where we held that section 664(a)'s premeditation penalty "must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor." (*Id.* at p. 616.) *Lee*, as the court recognizes, "did not involve the natural and probable consequences doctrine" (maj. opn., *ante*, at p. 10); the defendants in that case were charged with *directly* aiding and abetting several attempted murders (*Lee*, at pp. 618-619). Nevertheless, the court quotes *Lee*'s dictum that "where the natural-and-probable consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy. In light of such a possibility, it would not have been irrational for the Legislature to limit section 664(a) only to those attempted murderers who personally acted willfully and with deliberation and premeditation. But the Legislature has declined to do so." (*Id.* at pp. 624-625.) "Thus," the court concludes, "we indicated that section 664(a) applies to all aiders and abettors." (Maj. opn., *ante*, at p. 10.)

8

But neither that dictum nor anything else we said in *Lee* has any bearing on the issue now before us. The quotation from *Lee* merely says that the possibly lesser culpability of aiders and abettors convicted of attempted murder on a natural and probable consequences theory did not persuade the Legislature to require that an aider and abettor personally act with premeditation before suffering section 664(a)'s premeditation penalty. Defendant does not dispute that "section 664(a) applies to all aiders and abettors" (maj. opn., *ante*, at p. 10); he does not dispute that he may be punished under section 664(a) without a finding that he personally acted with premeditation. Indeed, defendant's claim does not concern the proper application of section 664(a); instead, it concerns the proper application of the natural and probable consequences doctrine. *Lee* says that an aider and abettor may be convicted of premeditated attempted murder, even under the natural and probable consequences doctrine, without a finding that he personally premeditated the attempted murder. *Lee* does not say, or even remotely suggest, that an aider and abettor may be convicted of premeditated attempted murder under the natural and probable consequences doctrine without a finding that the premeditation of defendant's confederate was a reasonably foreseeable consequence of the target offense.

Finally, the court relies on *People v. Cummins* (2005) 127 Cal.App.4th 667 (*Cummins*), even though the Court of Appeal in that case was careful not to adopt the categorical rule announced in today's decision. In *Cummins*, two men, Cummins and Kelly, robbed and carjacked a driver, put the victim in the car trunk, and drove for a couple of hours. When the car stopped, the victim was let out of the trunk near a cliff. "He was ordered to walk and told if he turned around he would be shot. Although he could hear voices behind him, he could not tell who was speaking to him." (*Id.* at pp. 671-672.) Then, either Cummins or Kelly pushed him off the cliff. Kelly challenged his conviction for premeditated

9

attempted murder on the ground that "the trial court failed to inform the jury it had to find that a *premeditated* attempted murder had to be a natural and probable consequence of the robbery or carjacking." (*Id.* at p. 680.)

In rejecting Kelly's claim, the Court of Appeal did not adopt a general rule — as the court does today — that "there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense." (Maj. opn., *ante*, at p. 13.) Instead, the Court of Appeal held that the instruction sought by Kelly was not required "under the facts of this case." (*Cummins*, *supra*, 127 Cal.App.4th at p. 680.) The court explained that "Kelly was a willing and active participant in all the steps that led to the attempt on [the victim's] life. Although the evidence did not conclusively determine which defendant had physical contact with the victim when he was pushed, certainly Kelly's conduct makes him no less blameworthy than Cummins." (*Id.* at pp. 680-681.) These factual circumstances, which *Cummins* found important, have no relevance under today's unqualified holding.

### III.

In sum, none of the arguments put forward by the court provides a convincing rationale for its holding. This is perhaps unsurprising because the problem presented by the instructional omission at issue is so basic that it cannot be evaded: Defendant aided and abetted the crime of robbery but was also convicted of committing a premeditated attempted murder and, on that basis, sentenced to life in prison. Defendant was entitled to have the jury determine whether the crime of which he was convicted — premeditated attempted murder — was a natural and probable consequence of the robbery he aided and abetted. But the jury was not asked to do so.

In contrast to the detailed provisions of our Penal Code, the natural and probable consequences doctrine imposes criminal liability on the basis of what is

10

essentially judge-made law.  We have acknowledged that the doctrine, though well-established in American jurisprudence, "has been 'subjected to substantial criticism' [citations]" (*Prettyman*, *supra*, 14 Cal.4th at p. 260) primarily on the ground that "an accomplice may be convicted of a crime of intent although his culpability regarding its commission may be no greater than that of negligence." (Dresser, Understanding Criminal Law (1995) § 30.05[B][5], p. 444, fns. omitted; accord, 2 LaFave, Substantive Criminal Law (2003) § 13.3(b), p. 362; Model Pen. Code & Commentaries, com. 6(b) to § 2.06, p. 312, fn. 42.)  Whatever unfairness there may be in that aspect of the doctrine, the problem in this case is even more elementary.  The doctrine, properly applied, punishes a defendant for the criminal conduct of others when such conduct is found by a jury to be a reasonably foreseeable consequence of his own bad act.  The court today stretches the doctrine to punish a defendant for the criminal conduct of others even though a crucial element of that conduct — premeditation in the commission of attempted murder, resulting in life imprisonment as opposed to a nine-year maximum sentence — was never found by a jury to be a reasonably foreseeable consequence of the defendant's own bad act.  Today's decision improperly extends the natural and probable consequences doctrine beyond its underlying rationale.

The question remains whether the failure to properly instruct the jury requires reversal of the judgment.  As noted, the Court of Appeal in *Cummins* held that omitting an instruction on the reasonable foreseeability of premeditation where the aider and abettor "was a willing and active participant in all the steps that led to the attempt on [the victim's] life" and where the evidence "certainly" showed the aider and abettor to be "no less blameworthy" than the perpetrator (*Cummins*, 127 Cal.App.4th at pp. 680-681) does not warrant reversal.  I would remand this case to the Court of Appeal to determine in the first instance whether

11

the instructional error was sufficiently prejudicial as to require reversal of the judgment.

LIU, J.

I CONCUR:

KENNARD, J.

12

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Favor

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 190 Cal.App.4th 770
**Rehearing Granted**

_____

**Opinion No.** S189317
**Date Filed:** July 16, 2012

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Michael E. Pastor

_____

**Counsel:**

Allen G. Weinberg, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec, Lawrence M. Daniels, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Allen G. Weinberg
Law Offices of Allen G. Weinberg
9454 Wilshire Boulevard, Suite 600
Beverly Hills, CA  90212
(310) 550-7177

Gary A. Lieberman
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-6863