[No. C057652. Third Dist. Aug. 11, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CEDRIC HART et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

[*]Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II through V.

**COUNSEL**

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant Tyrone Rayford.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant Cedric Hart.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**NICHOLSON, Acting P. J.**—Defendants Cedric Hart and Tyrone Rayford entered a liquor store intending to rob the husband and wife working there. Hart exhibited a gun and demanded money. When Hart saw a gun in an open drawer below the cash register, he fired on the husband, hitting him in the abdomen.

Convicted of attempted robbery, attempted murder, and assault with a firearm, defendants appeal. They make contentions of error relating to the sufficiency of the evidence, the jury instructions, and sentencing.

In the published portion of this opinion, we focus on the trial court's instructions with respect to the natural and probable consequences doctrine. Under the instructions as given, the jury may have convicted Rayford of attempted *premeditated* murder as an aider and abettor under the natural and probable consequences doctrine. The instructions on natural and probable consequences, however, referred to "attempted murder" without noting that, in order to convict Rayford of attempted *premeditated* murder under the natural and probable consequences doctrine, the jury would have to find that attempted *premeditated* murder was a natural and probable consequence of the attempted robbery. We therefore conclude that Rayford's conviction for attempted premeditated murder must be reversed and remanded.

In the unpublished portion of this opinion, we conclude that defendants' remaining contentions are without merit.

### FACTS

On a November evening, Zakkiyyah Spikes, who was defendant Cedric Hart's girlfriend, drove Hart and defendant Tyrone Rayford from south Sacramento to West Sacramento in her Buick. She got off the freeway in

West Sacramento, and Hart took over driving. Hart stopped the Buick on a residential street, and he and Rayford got out but left the engine running. Spikes stayed in the car.

Hart and Rayford went into the Poplar Food and Liquor Store where Parvinder Singh and Rupindir Kaur (also known as Rimpi Parher), husband and wife, were working. Hart and Rayford entered the store and raised Singh's suspicions by the way they were acting, looking out the window.

When the only other customer in the store left, Hart and Rayford approached the counter. Singh was behind the counter, at one of the cash registers. Hart and Rayford paid for some items, and Singh gave them change. Hart asked for a plastic bag, and Singh gave him one. After Singh gave Hart the bag, Hart opened his coat, revealing a gun and pointing it at Singh, and told Singh to put all the money in the bag.

Rayford moved behind the counter, and Hart moved to the edge of the counter. Singh opened a drawer under the cash register, where money was kept. There was also a gun in the drawer. As Singh put his hand on the money in the drawer, Hart saw the gun and shot at Singh. Hart rapidly fired the gun three times, hitting Singh in the abdomen once. Hart and Rayford moved away from Singh, Hart walking backwards toward the door, and Singh grabbed the gun and shot back. Singh shot Hart in the chest. During the exchange, Kaur was hit in the left hand and Rayford in the left foot.

Hart and Rayford rejoined Spikes in the Buick, and Spikes drove away. Officers of the West Sacramento Police Department soon gave chase but did not detain the three occupants until they had driven to Methodist Hospital of Sacramento in south Sacramento.

The two victims survived and testified at trial.

Additional evidence is summarized as it becomes relevant to the discussion.

## PROCEDURE

The district attorney charged Hart and Rayford by information with two counts of attempted second degree robbery (Pen. Code, §§ 21a, 211, 212.5, subd. (c)—counts 1 and 2); two counts of attempted murder (Pen. Code, §§ 21a, 187, subd. (a)—counts 3 and 4); and two counts of assault with a

firearm (Pen. Code, § 245, subd. (a)(2)—counts 5 and 6). As to the attempted robbery and attempted murder counts, the district attorney alleged that Hart personally discharged a firearm causing great bodily injury (Pen. Code, § 12022.53, subd. (d)) and that Rayford participated in a crime in which a principal was armed (Pen. Code, § 12022, subd. (a)(1)). As to the attempted murder counts, the district attorney alleged the attempted murders were willful, deliberate, and premeditated (Pen. Code, § 189). As to the assault with a firearm charged in count 5, the district attorney alleged that Hart personally used a firearm (Pen. Code, § 12022.5, subd. (a)) and personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)). As to the assault with a firearm charged in count 6, the district attorney alleged that Hart personally used a firearm (Pen. Code, § 12022.5, subd. (a)).

A jury found Rayford not guilty on count 4 (attempted murder of Rupindir Kaur), and could not reach a verdict concerning Hart on the same count. The jury convicted Hart and Rayford on all other counts and found all allegations associated with those counts true.

Count 4 against Hart was dismissed on the district attorney's motion.

The trial court sentenced Hart to an indeterminate term of life with possibility of parole on count 3 (attempted murder) and consecutive indeterminate terms of 25 years to life for the Penal Code section 12022.53, subdivision (d) enhancements (personally discharging a firearm causing great bodily injury) on counts 1 and 2. The court imposed consecutive determinate terms for counts 1 and 2 (attempted robbery)—the upper term of three years for count 1 and eight months (one-third of the middle term) for count 2. The court imposed and stayed terms on counts 5 and 6 (with enhancements) and on the Penal Code section 12022.53, subdivision (d) enhancement associated with count 3. The aggregate sentence imposed on Hart is a determinate term of three years eight months, plus an indeterminate term of 50 years to life, plus an indeterminate term of life with possibility of parole.

The trial court sentenced Rayford to an indeterminate term of life with possibility of parole on count 3 (attempted murder). The court imposed consecutive determinate terms on counts 1 and 2 (attempted robbery)—the middle term of two years for count 1, and eight months (one-third the middle term) for count 2. The court also imposed a one-year firearm enhancement on count 1 under Penal Code section 12022, subdivision (a)(1). The court imposed and stayed terms on counts 5 and 6 and on the firearm enhancements associated with counts 2 and 3. The aggregate sentence imposed on Rayford is a determinate term of three years eight months, plus an indeterminate term of life with possibility of parole.

## DISCUSSION

## I

### *Natural and Probable Consequences Instruction*

One of the prosecution's theories of guilt as to Rayford was that he aided and abetted Hart in the attempted robbery of Singh and that the attempted murder of Singh was a natural and probable consequence of the attempted robbery. Convicted of attempted murder of Singh with premeditation and deliberation, Rayford contends that the trial court did not sufficiently instruct the jury concerning the relationship between the natural and probable consequences doctrine and the premeditation and deliberation element of attempted premeditated murder. We agree. And we further determine that the error was prejudicial.

### A.  *The Natural and Probable Consequences Doctrine*

■ "At common law, a person encouraging or facilitating the commission of a crime could be held criminally liable not only for that crime, but for any other offense that was a 'natural and probable consequence' of the crime aided and abetted. [Citation.] [¶] Although the 'natural and probable consequences' doctrine has been 'subjected to substantial criticism' [citations], it is an 'established rule' of American jurisprudence [citation]. It is based on the recognition that 'aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion.' [Citation.]" *(People v. Prettyman* (1996) 14 Cal.4th 248, 260 [58 Cal.Rptr.2d 827, 926 P.2d 1013] *(Prettyman).)*

"The determination whether a particular criminal act was a natural and probable consequence of another criminal act aided and abetted by a defendant requires application of an objective rather than subjective test. [Citations.] This does not mean that the issue is to be considered in the abstract as a question of law. [Citation.] Rather, the issue is a factual question to be resolved by the jury in light of all of the circumstances surrounding the incident. [Citations.] Consequently, the issue does not turn on the defendant's subjective state of mind, but depends upon whether, under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant. [Citations.]" *(People v. Nguyen* (1993) 21 Cal.App.4th 518, 531 [26 Cal.Rptr.2d 323].)

B. *Instructions on Natural and Probable Consequences*

The trial court instructed the jury concerning the natural and probable consequences doctrine. It used CALCRIM No. 402 and inserted "attempted robbery" for the target crime and "attempted murder or assault with a firearm" for the nontarget crime. This instruction on the natural and probable consequences doctrine did not mention the premeditation element of attempted premeditated murder as charged and prosecuted in this case.

The instruction stated:

"The defendants are charged in Counts 1 and 2 with attempted second [degree] robbery, and in Counts 3 and 4 with attempted murder, and in Counts 5 and 6 with assault with a firearm.

"Under certain circumstances, natural and probable consequences doctrine of aiding and abetting, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.

"Under this doctrine, to prove that the defendant is guilty of the attempted murder or assault with a firearm, the People must prove that: [¶] . . . [¶]

"One, the defendant is guilty of attempted robbery.

"Two, during the commission of the attempted robbery the crime of attempted murder or assault with a firearm was committed.

"And three, under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the attempted murder or assault with a firearm was a natural and probable consequence of the commission of the attempted robbery.

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.

"In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the attempted murder or assault with a firearm was committed for a reason independent of the common plan to commit the attempted robbery, then the commission of the attempted murder or assault with a firearm was not a natural and probable consequence of attempted robbery.

"To decide whether the crimes of attempted murder and assault with a firearm were committed, please refer to the separate instructions that I have given you for those crimes."

The court also instructed the jury concerning the elements of attempted murder and how it may be proved. And it instructed the jury that, if the jury found the defendant guilty of attempted murder, it must "decide whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation."

The court did not relate the instruction concerning premeditation and deliberation to the natural and probable consequences instruction. In other words, the court did not instruct the jury that, in order to find Rayford guilty of attempted *premeditated* murder as an aider and abettor under the natural and probable consequences doctrine, the jury would have to find that attempted *premeditated* murder is a natural and probable consequence of the attempted robbery. With respect to the natural and probable consequences doctrine, the jury was asked only whether "under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the attempted murder or assault with a firearm was a natural and probable consequence of the commission of the attempted robbery."[1]

### C. *Application of Natural and Probable Consequences to Attempted Premeditated Murder*

We must determine whether the instructions given were sufficient to inform the jury of its duty with regard to the premeditation and deliberation element of attempted premeditated murder as it relates to the natural and probable consequences doctrine. We conclude that (1) the jury, under the facts of this case, could have concluded that attempted unpremeditated murder was a natural and probable consequence of the attempted robbery and that attempted premeditated murder was not a natural and probable consequence and (2) the instructions were insufficient to inform the jury concerning its duty in this regard.

#### 1. *Attempted Unpremeditated Murder*

■ The natural and probable consequences doctrine allows a jury to convict an aider and abettor of any nontarget crime committed by the actual perpetrator if it was the natural and probable consequence of the target crime that the aider and abettor intended to aid and abet. In *People v. Woods* (1992) 8 Cal.App.4th 1570 [11 Cal.Rptr.2d 231] (*Woods*), we held that the aider and

---

[1] At trial, Rayford proposed an additional instruction that the jury could find that the natural and probable consequence of the attempted robbery could be a lesser included offense of attempted murder, such as attempted voluntary manslaughter. The trial court declined to give this instruction. On appeal, Rayford states that the trial court properly refused to instruct the jury that attempted voluntary manslaughter is a lesser included offense of attempted murder under the circumstances of this case.

abettor may also be convicted of a nontarget crime lesser than the nontarget crime committed by the actual perpetrator. The Supreme Court cited and discussed the holding of *Woods* approvingly in *Prettyman, supra,* 14 Cal.4th at pages 275 and 276. The *Prettyman* court stated:

"In *Woods,* the defendant and a companion went in search of a rival gang member. They entered the apartment of two acquaintances of the member of the rival gang, and assaulted the occupants. As they were leaving, they saw two people getting into a car. The defendant's companion fired into the car, killing one occupant and injuring the other. At trial, the prosecution's theory was that the defendant was criminally responsible for the shootings committed by his companion, contending that the shootings were a natural and probable consequence of the crimes committed in the apartment that the defendant had aided and abetted. During deliberations, the jury asked, 'Can a defendant be found guilty of aiding and abetting a murder in the second degree if the actual perpetrator of the same murder is determined to be guilty of murder in the first degree?' The trial court answered, 'No.' The Court of Appeal held that this answer was prejudicial error. [Citation.]

"The *Woods* court reasoned that when the prosecution contends that the defendant is guilty as an accomplice under the 'natural and probable consequences' doctrine, the defendant 'does not stand in the same position as the perpetrator'; hence, 'the aider and abettor and the perpetrator may have differing degrees of guilt based on the same conduct depending on which of the perpetrator's criminal acts were reasonably foreseeable under the circumstances and which were not.' [Citation.]

■ "*Woods* also addressed the question whether the trial court should have instructed the jury on the lesser included offenses of voluntary and involuntary manslaughter. Although the court concluded that under the facts of that case such instructions were unnecessary, it held that in some cases such instructions would be necessary at the trial of an aider and abettor even if the evidence did not show that the actual perpetrator was guilty only of the lesser included offense. As the court explained: 'If the evidence raises a question whether the offense charged against the aider and abettor is a reasonably foreseeable consequence of the criminal act originally aided and abetted but would support a finding that a necessarily included offense committed by the perpetrator was such a consequence, the trial court has a duty to instruct sua sponte on the necessarily included offense as part of the jury instructions on aider and abettor liability.' [Citation.]" (*Prettyman, supra,* 14 Cal.4th at pp. 275–276, italics omitted.)

In *Woods,* we concluded that the trial court should have instructed the jury that it could find the aider and abettor guilty of the nontarget crime of second

degree murder even though the actual perpetrator was guilty of first degree murder. Here, we must decide whether that holding also requires the court to inform the jury that it can convict an aider and abettor of attempted unpremeditated murder even though the actual perpetrator is convicted of attempted premeditated murder. We conclude that *Woods* requires such an instruction.

Based on the facts of this case, a reasonable jury could have concluded that the actual perpetrator (Hart) was guilty of attempted premeditated murder but that the aider and abettor (Rayford) was guilty of no more than attempted unpremeditated murder.[2] It is beyond dispute that Hart and Rayford planned to rob the victims. Hart had a gun and used it, and it is reasonable to infer that Rayford knew that Hart had a gun and intended to use it if necessary. However, it would also be reasonable on these facts to conclude that a reasonable person in Rayford's position may not have concluded that attempted premeditated murder would be a natural and probable result of the planned robbery. In other words, it was theoretically possible for the jury to conclude that Hart premeditated the attempted murder but that such premeditation was not a natural and probable consequence of the attempted robbery. That was a factual question for the jury. Although the facts in the record are sufficient to support a jury finding that attempted premeditated murder was a natural and probable consequence of the attempted robbery, the facts do not lead ineluctably to that conclusion.

## 2. *Sufficiency of Instructions*

Having determined that the jury could have found, on the facts presented at trial, that attempted unpremeditated murder, and not attempted premeditated murder, was a natural and probable consequence of the attempted robbery, we must decide whether the instructions, as given, properly prepared the jury to determine the extent of Rayford's culpability for the attempted murder. We conclude that the instructions were inadequate.

Attempted premeditated murder is the functional equivalent of a greater offense than attempted unpremeditated murder. (*People v. Izaguirre* (2007) 42 Cal.4th 126, 132 [64 Cal.Rptr.3d 148, 164 P.3d 578].) The instruction properly defined attempted murder and the additional element of premeditation and deliberation. However, with respect to the natural and probable consequences doctrine, the instruction given to the jury by the trial court

---

[2] In the unpublished portion of this opinion, we find that there was sufficient evidence that both Hart and Rayford committed attempted premeditated murder. Therefore, Rayford may be retried on that charge, if the People elect to do so. (*People v. Edwards* (1985) 39 Cal.3d 107, 118 [216 Cal.Rptr. 397, 702 P.2d 555] [People entitled to retry after reversal for instructional error].)

addressed attempted murder and assault with a firearm without mentioning the premeditation and deliberation element of attempted premeditated murder.

The Attorney General asserts that attempted murder is not divided into degrees. Therefore, it was unnecessary to relate the premeditation and deliberation element to the natural and probable consequences doctrine because premeditation and deliberation were merely an element of attempted murder. This argument avoids, rather than answers, the question of how the jury is to know its duty with regard to the premeditation and deliberation element. The logic of *Woods* is not based on the separation of murder into degrees. It is based on the possibility that the jury could conclude that the aider and abettor was not necessarily guilty of all of the elements of the greater crime committed by the actual perpetrator. (*Woods, supra,* 8 Cal.App.4th at p. 1593.) Therefore, it is necessary to instruct the jury that it may find less culpability in the aider and abettor under the natural and probable consequences doctrine.

The instructions did not fully inform the jury that, in order to find Rayford guilty of attempted premeditated murder as a natural and probable consequence of attempted robbery, it was necessary to find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the attempted robbery.

The trial court's general instructions concerning the premeditation and deliberation element of attempted premeditated murder did not suffice. The trial court properly instructed the jury concerning premeditation and delibera-tion, as it relates to attempted murder, stating, in essence, that it is a subjective state of mind. However, in determining whether the premeditation and deliberation element was a natural and probable consequence of the attempted murder, the jury does not look at the aider and abettor's subjective state of mind. Therefore, the general instruction concerning the premeditation and deliberation element of attempted murder did not properly inform the jury concerning its duty with respect to the natural and probable conse-quences doctrine.

■ We conclude that the trial court has a duty, sua sponte, to instruct the jury in a case such as this one that it must determine whether premeditation and deliberation, as it relates to attempted murder, was a natural and probable consequence of the target crime. Having failed to do so here, the trial court erred.

### D.  *Prejudice Analysis*

Error in instructing the jury concerning lesser forms of culpability is reversible unless it can be shown that the jury properly resolved the question under the instructions, as given. (*People v. Chatman* (2006) 38 Cal.4th 344,

392 [42 Cal.Rptr.3d 621, 133 P.3d 534].) We conclude that the error was prejudicial and requires reversal.

Again, *Woods* is instructive in this regard. We said: "In effect, the jury was given an unwarranted all-or-nothing choice with respect to aider and abettor liability for the killing . . . . Faced with evidence from which it could conclude that only second degree murder was a reasonably foreseeable consequence of Windham's aiding and abetting Woods in assaulting Allen and Johnson, but having no option to convict Windham of second degree murder, the jury may have been reluctant to acquit him of the greater offense of first degree murder. Stated another way, the jury may have returned a verdict of guilt on first degree murder to avoid the absurd result of absolving Windham of any responsibility for a killing which was a reasonably foreseeable consequence of his act of aiding and abetting the violent assaults on Allen and Johnson. This illustrates why the jury should have been told it could find a defendant guilty of second degree murder as an aider and abettor even if it determined the perpetrator was guilty of first degree murder." (*Woods, supra,* 8 Cal.App.4th at p. 1590.)

Here, the problem is a bit different from the problem in *Woods.* In that case, the court told the jury that it could not convict the aider and abettor of a lesser crime. In our case, the court was not so explicit. Instead, it merely failed to inform the jury that it could convict Rayford of a lesser crime than Hart's crime under the natural and probable consequences doctrine. The result, however, is the same. The jury was left to its own devices without proper guidance concerning the law. Under the instructions given, the jury may have found Rayford guilty of attempted murder using the natural and probable consequences doctrine, an objective test, and then found the premeditation and deliberation element true using the only instruction given as to that element, which described a subjective test. Thus, the instructions on the natural and probable consequence doctrine and attempted murder were prejudicially deficient.

Rayford's attempted premeditated murder conviction must be reversed and the case remanded to the trial court for retrial. The jury determined that Rayford committed attempted murder under instructions that were proper to that extent. Thus, the only remaining question is whether he is further guilty under the premeditation and deliberation element. (*Woods, supra,* 8 Cal.App.4th at p. 1596.)

II–V*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

*See footnote, *ante*, page 662.

## DISPOSITION

The finding that Rayford premeditated and deliberated with respect to the attempted murder is reversed. If, after the filing of the remittitur in the trial court, the People do not bring Rayford to retrial on the premeditation and deliberation element within the statutory time limits, the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of attempted unpremeditated murder and shall resentence Rayford accordingly. In all other respects, the judgment as to each defendant is affirmed.

Hull, J., and Butz, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 19, 2009, S176421.