LIU, J., Dissenting.
Defendant was convicted of two counts of attempted murder on the theory that he aided and abetted the crime of robbery and that attempted murder was a natural and probable consequence of the robbery. Attempted murder is punishable by imprisonment for five, seven, or nine years. (Pen. Code, § 664, subd. (a) (hereafter section 664(a)); further undesignated statutory references are to this code.) However, if the attempted murder is “willful, deliberate, and premeditated,” then it “shall be punished by imprisonment ... for life with the possibility of parole.” (Ibid.) The jury in this case found that the attempted murders were committed willfully, deliberately, and with premeditation within the meaning of section 664(a). On that basis, the trial court sentenced defendant to consecutive life terms with the possibility of parole.
The trial court instructed the jury that it must determine whether “a reasonable person in the defendant’s position would have known that the commission of attempted murder was a natural and probable consequence of the commission of the robbery.” But the trial court did not instruct the jury that it must determine whether a reasonable person in defendant’s position would have known that premeditation in the commission of attempted murder was a natural and probable consequence of the robbery. This omission was error. In order to convict defendant of premeditated attempted murder on the theory that it was a natural and probable consequence of the robbery, the trier of fact must find that premeditated attempted murder—not simply attempted murder—was a reasonably foreseeable consequence of committing the robbery. Because today’s decision violates the fundamental precept that what is or is not a reasonably foreseeable consequence “is a factual issue to be *881 resolved by the jury” (People v. Medina (2009) 46 Cal.4th 913, 920 [95 Cal.Rptr.3d 202, 209 P.3d 105] (Medina)), I respectfully dissent.
I.
Criminal liability for aiding and abetting a crime is based on statute. Section 30 classifies the “parties to crimes” as principals and accessories. Section 31 defines “principals” in a crime to include persons who “aid and abet in its commission, or . . . have advised or encouraged its commission.” This court has interpreted section 31 to require that an aider and abettor must act “with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.” (People v. Beeman (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].)
The natural and probable consequences doctrine is a creature of common law. “At common law, a person encouraging or facilitating the commission of a crime could be held criminally liable not only for that crime [(the target offense)], but for any other offense [(a nontarget offense)] that was a ‘natural and probable consequence’ of the crime aided and abetted. [Citation.]” (People v. Prettyman (1996) 14 Cal.4th 248, 260 [58 Cal.Rptr.2d 827, 926 P.2d 1013] (Prettyman); see People v. Croy (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392].) The rationale for the doctrine is that “ ‘aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put in motion.’ [Citation.]” (Prettyman, at p. 260.)
Criminal liability under the natural and probable consequences doctrine is premised on a causal link between the charged nontarget offense and the target offense aided and abetted by the defendant. A question that often arises is whether a sufficient causal link exists under the circumstances of the case, and the answer turns on whether the nontarget offense was a reasonably foreseeable consequence of the target offense. As we explained in Medina: “ ‘A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor actually foresaw the additional crime, but whether, judged objectively, it was reasonably foreseeable. [Citation.]’ [Citation.] Liability under the natural and probable consequences doctrine ‘is measured by whether a reasonable person in the defendant’s position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.’ [Citation.]” (Medina, supra, 46 Cal.4th at p. 920.)
*882 Whether a nontarget offense is a reasonably foreseeable consequence of the target offense is a fact-specific inquiry to be resolved by a jury. This basic rule was established over a century ago in the first California decision to embrace the natural and probable consequences doctrine. (See People v. Kaufman (1907) 152 Cal. 331, 335 [92 P. 861] [“[W]hether or not the act committed was the ordinary and probable effect of the common design or whether it was a fresh and independent product of the mind of one of the conspirators, outside of, or foreign to, the common design, is a question of fact for the jury, [citations], and if there be any evidence to support the finding of the jury on this question, its determination is conclusive.”].) Over the years, we have consistently followed this rule. (See Medina, supra, 46 Cal.4th at p. 920 [“A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case [citation] and is a factual issue to be resolved by the jury.”]; People v. Croy, supra, 41 Cal.3d at p. 12, fn. 5, quoting People v. Durham (1969) 70 Cal.2d 171,181 [74 Cal.Rptr. 262, 449 P.2d 198] [“ ' “Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant’s knowledge are questions of fact for the jury.” ’ ”].)
A jury finding of reasonable foreseeability provides the crucial nexus that links a defendant’s culpability for aiding and abetting the target offense to his criminal liability for the nontarget offense. Without that nexus, there is no basis—no legally sufficient theory of causation—to find the defendant culpable for the nontarget offense. Our cases have thus recognized, without exception, that “the trier of fact must. . . find that... the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted.” (Prettyman, supra, 14 Cal.4th at p. 262.)
Today’s decision departs from this basic rule. The court holds that defendant may be convicted of premeditated attempted murder as a natural and probable consequence of the robbery he aided and abetted, even though the jury was asked to determine only whether “the commission of attempted murder was a natural and probable consequence of the commission of the robbery.” This holding disregards the essential causal link that must exist between the charged nontarget offense and the target offense aided and abetted by defendant. How can defendant be convicted of premeditated attempted murder on a natural and probable consequences theory when the jury was never asked to determine whether premeditated attempted murder was a natural and probable consequence of the target offense?
The Court of Appeal in People v. Hart (2009) 176 Cal.App.4th 662 [97 Cal.Rptr.3d 827] (Hart) reached the correct result on facts similar to those in this case. Two men, Hart and Rayford, went to rob a liquor store. Hart had a *883 gun and ordered the store owner, Singh, to open a drawer under the cash register. Upon seeing a gun in the drawer, Hart shot Singh, injuring but not killing him. “One of the prosecution’s theories of guilt as to Rayford was that he aided and abetted Hart in the attempted robbery of Singh and that the attempted murder of Singh was a natural and probable consequence of the attempted robbery.” (Id. at p. 668.) The jury was asked whether attempted murder was a natural and probable consequence of the attempted robbery and, if so, whether the attempted murder was premeditated. (Id. at pp. 669-670.) Rayford was convicted of premeditated attempted murder and sentenced to life imprisonment with the possibility of parole.
The Court of Appeal held that the trial court erred in failing to instruct the jury that “in order to find Rayford guilty of attempted premeditated murder as a natural and probable consequence of attempted robbery, it was necessary to find that attempted premeditated murder, not just attempted murder, was a natural and probable consequence of the attempted robbery.” (Hart, supra, 176 Cal.App.4th at p. 673.) Without the proper instruction, the court explained, the jury never determined the precise extent of Rayford’s culpability: “Based on the facts of this case, a reasonable jury could have concluded that the actual perpetrator (Hart) was guilty of attempted premeditated murder but that the aider and abettor (Rayford) was guilty of no more than attempted unpremeditated murder. It is beyond dispute that Hart and Rayford planned to rob the victims. Hart had a gun and used it, and it is reasonable to infer that Rayford knew that Hart had a gun and intended to use it if necessary. However, it would also be reasonable on these facts to conclude that a reasonable person in Rayford’s position may not have concluded that attempted premeditated murder would be a natural and probable result of the planned robbery. In other words, it was theoretically possible for the jury to conclude that Hart premeditated the attempted murder but that such premeditation was not a natural and probable consequence of the attempted robbery. That was a factual question for the jury. Although the facts in the record are sufficient to support a jury finding that attempted premeditated murder was a natural and probable consequence of the attempted robbery, the facts do not lead ineluctably to that conclusion.” (Id. at p. 672, fn. omitted.)
Here, as in Hart, a reasonable jury could have found that although defendant’s confederate premeditated the attempted murder, such premeditation was not a natural and probable consequence of the robbery. The evidence amply supported the jury’s finding that attempted murder was a reasonably foreseeable consequence of the robbery. The jury could have readily inferred that defendant knew his confederate was carrying a gun and intended to use it if necessary. But it is less clear that a reasonable person in defendant’s *884 position would have or should have known that his confederate’s premeditated commission of attempted murder was a reasonably foreseeable consequence of the robbery. Defendant does not contend that it would be unreasonable for a jury to so find. His only claim is that this question should have been put to the jury. Under our long and settled line of cases holding that reasonable foreseeability “is a factual issue to be resolved by the jury” (Medina, supra, 46 Cal.4th at p. 920), defendant is correct.
II.
Today’s opinion avoids this straightforward conclusion through a series of unpersuasive arguments, the sum total of which stretches the natural and probable consequences doctrine beyond principled application.
First, the court discredits Hart on the ground that “attempted premeditated murder and attempted unpremeditated murder are not separate offenses. Attempted murder is not divided into different degrees.” (Maj. opn., ante, at p. 876, citing People v. Bright (1996) 12 Cal.4th 652, 665-667 [49 Cal.Rptr.2d 732, 909 P.2d 1354].) The court says Hart failed to discuss Bright and improperly relied on People v. Woods (1992) 8 Cal.App.4th 1570 [11 Cal.Rptr.2d 231] (Woods), which held that “[i]f the evidence raises a question whether the offense charged against the aider and abettor is a reasonably foreseeable consequence of the criminal act originally aided and abetted but would support a finding that a necessarily included offense committed by the perpetrator was such a consequence, the trial court has a duty to instruct sua sponte on the necessarily included offense as part of the jury instructions on aider and abettor liability.” (Id. at p. 1593.) “Because Woods involved murder—not attempted murder—where there are different degrees of the offense, Hart’s reliance on Woods’s lesser included offense analysis is misplaced.” (Maj. opn., ante, at p. 877.)
As the court acknowledges in a footnote (maj. opn., ante, at p. 877, fn. 2), however, we held in People v. Seel (2004) 34 Cal.4th 535 [21 Cal.Rptr.3d 179, 100 P.3d 870] (Seel) that because a premeditation allegation under section 664(a) exposes the defendant to significantly greater punishment for attempted murder, the high court’s decision in Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348]—issued four years after Bright—“compels the conclusion that section 664(a) constitutes an element of the offense. [Citation.]” (Seel, at p. 549.) We noted that “ ‘[t]he defendant’s intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense “element.” ’ [Citation.] . . . ‘[[S]ection 664(a)’s] inquiry goes precisely to what happened in the “commission of the offense.” ’ [Citation.]” (Seel, at p. 549.)
*885 Although Seel did not specifically overrule Bright’s holding that section 664(a) does not divide attempted murder into different degrees (cf. Seel, supra, 34 Cal.4th at p. 550, fn. 6 [declaring Bright “no longer controlling” to the extent its analysis “conflict[s] with intervening high court decisions”]), it is not clear what difference that makes to the present inquiry. The Court of Appeal in Hart explained that “[t]he logic of Woods is not based on the separation of murder into degrees. It is based on the possibility that the jury could conclude that the aider and abettor was not necessarily guilty of all of the elements of the greater crime committed by the actual perpetrator.” (Hart, supra, 176 Cal.App.4th at p. 673, citing Woods, supra, 8 Cal.App.4th at p. 1593.) Here, as in Hart, defendant’s claim does not turn on whether premeditated attempted murder and unpremeditated attempted murder are separate offenses under section 664(a). Defendant’s claim is that the jury never decided whether his culpability properly extended—by dint of reasonable foreseeability—to all elements of the nontarget offense committed by his confederate, including premeditation. As noted, “the trier of fact must . . . find that ... the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted” (Prettyman, supra, 14 Cal.4th at p. 262), and “ ‘[section 664(a)’s] inquiry goes precisely to what happened in the “commission of the offense” ’ ” (Seel, supra, 34 Cal.4th at p. 549).
Next, the court relies on People v. Lee (2003) 31 Cal.4th 613 [3 Cal.Rptr.3d 402, 74 P.3d 176], where we held that section 664(a)’s premeditation penalty “must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor.” (31 Cal.4th at p. 616.) Lee, as the court recognizes, “did not involve the natural and probable consequences doctrine” (maj. opn., ante, at p. 878); the defendants in that case were charged with directly aiding and abetting several attempted murders (Lee, at pp. 618-619). Nevertheless, the court quotes Lee’s dictum that “where the natural-and-probable consequences doctrine does apply, an attempted murderer who is guilty as an aider and abettor may be less blameworthy. In light of such a possibility, it would not have been irrational for the Legislature to limit section 664(a) only to those attempted murderers who personally acted willfully and with deliberation and premeditation. But the Legislature has declined to do so.” (Id. at pp. 624—625.) “Thus,” the court concludes, “we indicated that section 664(a) applies to all aiders and abettors.” (Maj. opn., ante, at p. 878.)
But neither that dictum nor anything else we said in Lee has any bearing on the issue now before us. The quotation from Lee merely says that the possibly lesser culpability of aiders and abettors convicted of attempted *886 murder on a natural and probable consequences theory did not persuade the Legislature to require that an aider and abettor personally act with premeditation before suffering section 664(a)’s premeditation penalty. Defendant does not dispute that “section 664(a) applies to all aiders and abettors” (maj. opn., ante, at p. 878); he does not dispute that he may be punished under section 664(a) without a finding that he personally acted with premeditation. Indeed," defendant’s claim does not concern the proper application of section 664(a); instead, it concerns the proper application of the natural and probable consequences doctrine. Lee says that an aider and abettor may be convicted of premeditated attempted murder, even under the natural and probable consequences doctrine, without a finding that he personally premeditated the attempted murder. Lee does not say, or even remotely suggest, that an aider and abettor may be convicted of premeditated attempted murder under the natural and probable consequences doctrine without a finding that the premeditation of defendant’s confederate was a reasonably foreseeable consequence of the target offense.
Finally, the court relies on People v. Cummins (2005) 127 Cal.App.4th 667 [25 Cal.Rptr.3d 860] (Cummins), even though the Court of Appeal in that case was careful not to adopt the categorical rule announced in today’s decision. In Cummins, two men, Cummins and Kelly, robbed and carjacked a driver, put the victim in the car trunk, and drove for a couple of hours. When the car stopped, the victim was let out of the trunk near a cliff. “He was ordered to walk and told if he turned around he would be shot. Although he could hear voices behind him, he could not tell who was speaking to him.” (Id. at pp. 671-672.) Then, either Cummins or Kelly pushed him off the cliff. Kelly challenged his conviction for premeditated attempted murder on the ground that “the trial court failed to inform the jury it had to find that a premeditated attempted murder had to be a natural and probable consequence of the robbery or carjacking.” (Id. at p. 680.)
In rejecting Kelly’s claim, the Court of Appeal did not adopt a general rule—as the court does today—that “there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense.” (Maj. opn., ante, at p. 880.) Instead, the Court of Appeal held that the instruction sought by Kelly was not required “under the facts of this case.” (Cummins, supra, 127 Cal.App.4th at p. 680.) The court explained that “Kelly was a willing and active participant in all the steps that led to the attempt on [the victim’s] life. Although the evidence did not conclusively determine which defendant had physical contact with the victim when he was pushed, certainly Kelly’s conduct makes *887 him no less blameworthy than Cummins.” (Id. at pp. 680-681.) These factual circumstances, which Cummins found important, have no relevance under today’s unqualified holding.
III.
In sum, none of the arguments put forward by the court provides a convincing rationale for its holding. This is perhaps unsurprising because the problem presented by the instructional omission at issue is so basic that it cannot be evaded: Defendant aided and abetted the crime of robbery but was also convicted of committing a premeditated attempted murder and, on that basis, sentenced to life in prison. Defendant was entitled to have the jury determine whether the crime of which he was convicted—premeditated attempted murder—was a natural and probable consequence of the robbery he aided and abetted. But the jury was not asked to do so.
In contrast to the detailed provisions of our Penal Code, the natural and probable consequences doctrine imposes criminal liability on the basis of what is essentially judge-made law. We have acknowledged that the doctrine, though well-established in American jurisprudence, “has been ‘subjected to substantial criticism’ [citations]” (Prettyman, supra, 14 Cal.4th at p. 260) primarily on the ground that “an accomplice may be convicted of a crime of intent although his culpability regarding its commission may be no greater than that of negligence.” (Dressier, Understanding Criminal Law (1995) § 30.05[B][5], p. 444, fns. omitted; accord, 2 LaFave, Substantive Criminal Law (2003) § 13.3(b), p. 362; Model Penal Code & Commentaries, com. 6(b) to § 2.06, p. 312, fn. 42.) Whatever unfairness there may be in that aspect of the doctrine, the problem in this case is even more elementary. The doctrine, properly applied, punishes a defendant for the criminal conduct of others when such conduct is found by a jury to be a reasonably foreseeable consequence of his own bad act. The court today stretches the doctrine to punish a defendant for the criminal conduct of others even though a crucial element of that conduct—premeditation in the commission of attempted murder, resulting in life imprisonment as opposed to a nine-year maximum sentence—was never found by a jury to be a reasonably foreseeable consequence of defendant’s own bad act. Today’s decision improperly extends the natural and probable consequences doctrine beyond its underlying rationale.
The question remains whether the failure to properly instruct the jury requires reversal of the judgment. As noted, the Court of Appeal in Cummins held that omitting an instruction on the reasonable foreseeability of premeditation where the aider and abettor “was a willing and active participant in all the steps that led to the attempt on [the victim’s] life” and where the evidence “certainly” showed the aider and abettor to be “no less blameworthy” than *888 the perpetrator (Cummins, 127 Cal.App.4th at pp. 680-681) does not warrant reversal. I would remand this case to the Court of Appeal to determine in the first instance whether the instructional error was sufficiently prejudicial as to require reversal of the judgment.
Kennard, J., concurred.
Appellant’s petition for a rehearing was denied September 26, 2012.