Filed 3/5/13  P. v. Martinez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D058929 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD224457) |
| DARREN MARTINEZ et al., | |
| Defendant and Appellant. | |

APPEALS from judgments of the Superior Court of San Diego County, Robert F. O'Neill, Judge.  Affirmed with directions.

A jury convicted Darren Martinez and Hector Martinez of first degree murder (Pen. Code,[1] § 187, subd. (a); count 1); assault with a semi-automatic firearm (§ 245, subd. (b); count 2); and assault with force likely to cause great bodily injury (§ 245,

---

[1]    All statutory references are to the Penal Code unless otherwise stated.  Appellants are not related by blood; we refer to them by their first names to avoid confusion.

subd. (a)(1); count 3). It additionally convicted Darren of assault with a deadly weapon and force likely to cause great bodily injury (§ 245, subd. (a)(1); count 4) and two counts of assault with force likely to cause great bodily injury (§ 245, subd. (a)(1); counts 5 and 6). The jury found true allegations that each crime was committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)); the appellants were principals in the commission of the murder, and a principal used a firearm and proximately caused great bodily injury and death (§ 12022.53, subds. (d), (e)(1)); in the commission of the murder, Darren intentionally and personally discharged a firearm, proximately causing great bodily injury and death (§ 12022.53, subd. (d)), and personally used a firearm (§ 12022.5, subd. (a)); Darren personally used a firearm in the commission of the count 2 assault (§ 12022.5, subd. (a)); and Darren personally used a deadly weapon and inflicted great bodily injury in the count 4 assault (§ 1192.7, subds. (c)(8), (23)). The jury also found true that Hector was vicariously armed with a firearm in the commission of the murder (§ 12022, subd. (a)), and was 16 years or older when he committed the offenses (Welf. & Inst. Code, § 707, subd. (d)(1)).

The court sentenced Darren to a determinate term of 14 years plus an indeterminate term of 50 years to life. It sentenced Hector to a determinate term of six years plus an indeterminate term of 50 years to life.

Hector contends his murder conviction must be reversed because the court failed to properly instruct the jury on the natural and probable consequences doctrine of liability for aiders and abettors. He alternatively contends his attorney provided ineffective assistance by failing to object to the jury instructions on that doctrine. Darren contends

2

the court prejudicially erred in admitting expert testimony that counts four through six were gang motivated. Appellants both contend there was no substantial evidence to support the count three conviction for assault by means of force likely to produce great bodily injury; and the abstracts of judgment must be amended to correct certain errors. They both join in each other's contentions as applicable. We affirm the judgments, but direct the trial court to amend the abstracts of judgment to correct the errors identified by appellants.

## FACTUAL BACKGROUND

*Counts 1, 2, and 3*

In the late evening of August 20, 2009, Stella Revelez, who was dating Darren at the time, saw him holding a gun. After Stella objected to his having it in her house, Darren asked to borrow her car, saying he would return the gun. Darren and Hector left the house for approximately half an hour. Shortly after they returned, Revelez drove Darren, Hector and others to buy fast food, and while at the drive-thru, she saw a gun in Darren's lap. As they were returning home, she stopped the vehicle at Darren's request, and Darren and Hector jumped out. Approximately three or four minutes later, Revelez heard gunshots, and saw someone on the ground being held by another person. Darren ran toward her vehicle, but she drove home without him. She refused to answer Darren's phone calls, but later picked him up and took him to her house at the request of Darren's brother, Raul. Darren changed his clothes and wrapped his gun in a towel. Raul told her those items would be gone from her house by the next day.

3

Jimmy Parker testified that on August 21, 2009, at approximately 1:30 a.m., he and Guillermo Esparza were walking on Paradise Valley Road in San Diego to Parker's house when two young men, later identified as Hector and Darren, ran up to them and asked them where they were from. Parker interpreted the question as a challenge, and responded he "was from SFA," which is not a gang but a team that defaces buildings with graffiti. A fist fight lasting approximately four minutes ensued. Hector punched Parker, who moved, but in vain, because he was "nicked . . . in the back of [his] head." Parker swung back, but missed. Parker heard Darren say, "This is Lomas," which is the name of a street gang. Parker heard gunshots coming from Darren's direction. Parker and Hector stopped fighting momentarily. Afterwards, Hector took another swing at Parker, who ran to a side. Parker heard two more gunshots. Parker saw Esparza had fallen to the ground. Darren and Hector ran away. Parker ran towards Esparza and cradled him, while trying to revive him. Esparza died from multiple gunshot wounds.

At trial, Parker confirmed the incident with Hector was "a regular street fight where you got your fist up and out there swinging away." Defense counsel asked whether Parker and Hector were "trying to knock the hell out of" each other. Parker answered affirmatively.

*Counts 4, 5, and 6*

On September 1, 2009, Revelez drove Darren and others to a taco shop in San Diego, and stayed in her vehicle while Darren and most of the others went inside. Abigail Romero was inside the taco shop. She testified Darren had a tattoo on his neck that included the word "Lomas." Darren and others challenged some unwilling men

4

inside the taco shop to a fight, and beat them. Darren used a knife and said, "I killed your homie." Someone yelled, "Lomas." Revelez saw people running around inside the taco shop, and started moving her vehicle. Just then, Darren and his party jumped into Revelez's vehicle, and she drove home.

San Diego Police Officer Nicholas Link responded to the taco shop and saw that one of the victims, Jose Juarez, had a knife cut wound on his elbow.

DISCUSSION

I.

*Hector's Appeal*

Relying on *People v. Hart* (2009) 176 Cal.App.4th 662 (*Hart*), Hector contends his murder conviction must be reversed "because the jury instruction on the natural and probable consequences doctrine failed to correctly inform the jury that [he] was guilty of premeditated murder only if the jury found that premeditated murder, and not merely murder, was the natural and probable consequence of the target crimes." Hector argues the jury instruction "left the jury uninformed that it could find [him] guilty of second degree murder as an accomplice even if [it] found that the shooter, Darren Martinez, committed first degree murder." Hector argues the error was prejudicial, as shown by the prosecutor's repeated closing argument references to appellants as the "murder team," with each of them being "equally liable" or "equally guilty" of Esparza's murder. Hector further contends he was prejudiced, as indicated by the jury's question to the court regarding what "crime" CALCRIM No. 401 referred to; and the court's unhelpful

5

response that "crime" referred to the charged crimes, and that the jury should consult CALCRIM Nos. 400, 401 and 403.[2]

" ' "A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. [Citation.]" [Citation.] Liability under the natural and probable consequences doctrine "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." [Citation.]' [Citations] A reasonably foreseeable consequence is a factual issue to be resolved by the jury who evaluates all the factual circumstances of the individual case." (*People v. Favor* (2012) 54 Cal.4th 868, 876-880 (*Favor*).)

---

2    The court instructed the jury with CALCRIM No. 403 as follows: "Before you may decide whether a defendant is guilty of murder, you must decide whether he is guilty of assault and/or battery. [¶] To prove that a defendant is guilty of murder, the People must prove that: [¶] 1. The defendant is guilty of assault and/or battery; [¶] 2. During the commission of assault and/or battery, a coparticipant in that assault and/or battery committed the crime of murder; [¶] And [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the murder was a natural and probable consequence of the commission of the assault and/or battery." The instruction further states, "To decide whether the crime of murder was committed, please refer to the separate instructions that I will give you on that crime." The court also instructed the jury regarding the degrees of murder with CALCRIM Nos. 500, 520 and 521.

*Hart*, *supra*, 176 Cal.App.4th 662 relied extensively *on People v. Woods* (1992) 8 Cal.App.4th 1570 (*Woods*). The court in *Woods* found the trial court erred when it told the jury it could not find the aider and abettor guilty of murder in the second degree if it determined the perpetrator was guilty of first degree murder. (*Woods*, at p. 1579.) During the pendency of this appeal, the *Favor* court rejected *Hart* in part because it relied on *Woods*, which involved " 'murder—not attempted murder—where there are different degrees of the offense.' " (*Favor*, *supra*, 54 Cal.4th at p. 877 [3].) The *Favor* court did not otherwise address the analysis in *Woods*. Yet, even if *Woods* remains good law, it does not require a reversal in this case. In *Woods*, the court explained: "[T]he trial court need not instruct on a particular necessarily included offense if the evidence is such that the aider and abettor, if guilty at all, is guilty of something beyond that lesser offense, i.e., if the evidence establishes that a greater offense was a reasonably foreseeable consequence of the criminal act originally contemplated, and no evidence suggests otherwise." (*Woods*, at p. 1593.)

Here, Hector was the aider and abettor, but he initiated the attack by asking which gang the victims belonged to, and swung and hit Parker. Even after approximately four minutes of fighting, Hector did not manage to overcome Parker's resistance. Afterwards,

---

[3]    The *Favor* court further concluded, "Under the natural and probable consequences doctrine, there is no requirement that an aider and abettor reasonably foresee an attempted premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*Favor*, *supra*, 54 Cal.4th at p. 880.)

Darren fired one shot. Hector, undeterred by the gunshot, subsequently took another swing at Parker. It was not until Darren fired two more shots that Hector and Darren ran away. This evidence offers no indication that the murder was anything other than willful, deliberate and premeditated. (See *People v. Canizalez* (2011) 197 Cal.App.4th 832, 853.)

We note that "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all." (*People v. Canizalez*, *supra*, 197 Cal.App.4th at p. 852.) "Because the nontarget offense is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime." (*Ibid*.) Therefore, Hector is wrong that the court erroneously instructed regarding aider and abettor liability with CALCRIM Nos. 400, 401 and 402, because he could indeed be convicted of first degree murder based on vicarious liability for the malice and premeditation of the shooter. Having resolved this claim on the merits and concluded there was no instructional error, we need not discuss Hector's alternative claim that he received ineffective assistance of counsel.

## II.

### *Darren's Appeal*

*Darren Concedes the Gang Expert's Testimony Was Properly Admitted*

Darren contends in his opening brief that Detective Hernandez gave an answer "in response to a hypothetical which is merely a thinly-disguised reference to a defendant."

8

During the pendency of this appeal, the California Supreme Court decided *People v. Vang* (2011) 52 Cal.4th 1038, which Darren concedes, and we agree, disposed of his appellate contention. *Vang* held that an expert may be asked a hypothetical question "based on what the evidence showed *these* defendants did, not what someone else might have done." (*Id.*, at p. 1046.) The court reiterated that "expert testimony is permitted even if it embraces the ultimate issue to be decided." (*Id.*, at p. 1049.) The court also distinguished *People v. Killebrew* (2002) 103 Cal.App.4th 644, explaining, "*It would be incorrect to read Killebrew as barring the questioning of expert witnesses through the use of hypothetical questions regarding hypothetical persons.*" (*Vang*, at p. 1047.)

*Sufficiency of Evidence for Assault With Force Likely to Cause Great Bodily Injury*

Both appellants contend insufficient evidence supports their section 245, subdivision (a)(1) convictions because Hector did not punch Parker in a manner likely to produce great bodily injury. Specifically, although Hector concedes he threw approximately two or three punches at Parker, he argues his "harmless 'nicking' supports no more than a misdemeanor conviction" because "[t]he evidence shows Parker, with a distinct size advantage over [him], was prepared for a fist fight and that [he] and [Parker] exchanged harmless swings but for [his] singular glancing blow to the back side of Parker's head." Darren argues, "[T]he total lack of injury is circumstantial evidence the punch by Hector [] was not likely to produce great bodily injury. Apart from the lack of injuries, there was no other evidence as to the nature or strength of the punch."

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, "we examine the whole record in the light most favorable to

9

the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

The court instructed the jury with CALCRIM No. 875 regarding the count three charge of assault with deadly weapon or force likely to produce great bodily injury in violation of section 245, subdivision (a)(1):

"To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant did an act that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted, he had the present ability to apply force likely to produce great bodily injury. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] The terms

10

*application of force* and *apply force* mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind. [¶] . . . [¶] The People are not required to prove that the defendant actually touched someone. [¶] The People are not required to prove that the defendant actually intended to use force against someone when he acted. [¶] No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was. [¶] *Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

Parker testified the fight lasted approximately four minutes, and agreed it was "a regular street fight where you got your fist up and out there swinging away." He also agreed he and Hector were "trying to knock the hell out of" each other. Even after the fight was momentarily interrupted by the gunshot, Hector sought to punch Parker again. The fact Parker managed to avoid getting more than a nick in the head does not establish that appellants lacked the intent to assault him. We conclude this evidence sufficed to support both appellants' assault convictions under aider and abettor principles.

11

Both appellants also mention that the prosecutor incorrectly described Hector's punch as a "sucker punch."[4] However, we note that the jury was instructed that it alone was to decide the facts of the case (CALCRIM No. 200), and the arguments of counsel was not evidence (CALCRIM No. 222). We presume the jury followed the court's instruction. (*People v. Holt* (1997) 15 Cal.4th 619, 662 ["Jurors are presumed to understand and follow the court's instructions"].)

III.

*Modification of Abstracts of Judgment*

The People concede, and we agree, the abstracts of judgment should be amended as follows: The date of sentencing for both appellants was January 7, 2011. The correct total prison term for each appellant's murder conviction is 50 years to life. The court ordered the count 2 gang enhancement stayed under section 654. Finally, Darren's counts 3, 5, and 6 convictions, and Hector's count 3 conviction, were for assault by means likely to produce great bodily injury under section 245, subdivision (a)(1). The abstracts of judgment should be amended to reflect the modifications.

---

4       The prosecutor argued to the jury, "Now it is interesting to know how Hector first assaults. He does the—like put up the dukes or whatever, he takes a head, a sucker punch, if you will, right to [Parker's] face area. He is telling you by trying to hit him in the face, that he is out to knock him out. . . . [¶] [Hector] is not sissy fighting, not slapping [Parker] around, not pushing him at first, doing lesser things. He is going straight for it, straight for the face, straight for that sucker punch."

12

DISPOSITION

The judgments are affirmed.  The trial court is directed to amend each appellant's abstract of judgment as follows:  The correct sentencing date was January 7, 2011; the murder conviction sentence is 50 years to life; the count two gang enhancement is stayed under Penal Code section 654.  Darren's counts 3, 5, and 6 convictions and Hector's count 3 conviction were for assault by means likely to produce great bodily injury under Penal Code section 245, subdivision (a)(1).  The trial court is directed to forward certified copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

AARON, J.

13